**JACKSONVILLE PORT AUTHORITY v. SOUTHERN AIRWAYS, Inc., et al.**
Nos. 74-3077-CA, 74-3079-CA, 74-3080-CA.
Circuit Court, Duval County.
November 25, 1974.

William Lee Allen, Jacksonville, for the plaintiff.

James E. Hodge, Jacksonville, for the defendants.

HENRY F. MARTIN, Jr., Circuit Judge.

*Final judgment:* This action was brought by plaintiff, as separate actions, against the various airline defendants operating from the Jacksonville International Airport owned by plaintiff. The several actions were consolidated for purposes of trial. The principal issue in this case involves the charges levied against the defendant air carriers for their "exclusive use" space within the terminal building.

Trial of this action was had before the court without a jury. The evidence reveals the following —

Chap. 63-1453, Laws of Florida, as amended by Chaps. 65-1738 and 65-1755, granted the city commission of the city of Jacksonville powers over any airports owned or operated by the city of Jacksonville.

In connection with the proposed construction of Jacksonville International Airport, the city council of the city of Jacksonville enacted bond ordinance FF-253 on April 5, 1965, and a final decree of validation of said bonds was entered by the circuit court of Duval County on June 24, 1968, with no appeal therefrom being taken. The bond ordinance requires the city to impose such rates and charges as are necessary to pay off any bondholders according to the amortization schedule included therein. Bonds were duly sold and construction started.

Upon completion of Jacksonville International Airport, the city commission on September 17, 1968, enacted a resolution establishing the rates and charges for the use of said airport.

Chap. 67-1533, Laws of Florida, amending Chap. 63-1447, transferred the ownership and control of Jacksonville International Airport from the city of Jacksonville to plaintiff, and gave plain-

tiff the power to fix and establish rates and charges for the use of the airport effective October 1, 1968.

On October 17, 1968 the plaintiff, by resolution, ratified and adopted as its own the September 17, 1968 resolution of the Jacksonville City Commission.

On October 27, 1968, defendants, along with other airlines, commenced operating from the airport, and went into possession of certain spaces thereon. The resolution of October 17, 1968 expressly provided for the execution of a lease between plaintiff and each of the several air carriers. Such a lease had not been entered into as of the date of trial of this cause. The effect of such a lease with respect to "exclusive use" space is not presently before the court for decision.

April 1, 1971, brought about a situation which ultimately resulted in the present action. On that date, Eastern Airlines surrended 2,876 square feet of "exclusive use" space. "Exclusive use" space is space used exclusively by one airline, such as its offices, ticket counters, etc., as opposed to "common use" space such as the lobby, rest rooms, etc. Subsequently, on September 1, 1973, United Airlines surrendered 353 square feet of "exclusive use" space, and on November 1, 1973, Eastern gave up another 1,065 square feet of such space.

This surrendering of "exclusive use" space brought into play the pertinent provision of the rate resolution dealing with such space. In order to view that provision in context, the court sets forth Section 8 of the resolution in its entirety as follows —

> Section 8. The following charges shall be levied against all air carriers serving Jacksonville International Airport on a scheduled basis:
>
> For use of the Airfield ............................................ $502,600 per annum
> For use of the Passenger Terminal Ramp ............. $ 96,900 per annum
>
> For use of the Public Address System .................... $ 10,500 per annum
>
>    a. Exclusive use ............................................ $591,200 per annum
>    b. Common use ............................................... $159,100 per annum
>
> The aforesaid sums shall be collected in the following manner:
>
> With respect to the charge "for use of the airfield," one-twelfth of the total annual charge shall be prorated monthly among all scheduled air carrier users in the same proportion that each airline's total landed weight at the airport during the month of account bears to the total landed weight of all scheduled air carriers at the airport during the month of account.

With respect to the charge "for use of the passenger terminal ramp," one-twelfth of the total annual charge shall be prorated monthly among all scheduled air carrier users at the airport in the same proportion that each air carrier's total aircraft landings during the month of account bears to total aircraft landings of all scheduled air carriers at the airport during the month of account.

*With respect to the charge for "exclusive use" of "space within the Terminal Building," one-twelfth of the total annual charge shall be prorated monthly among all scheduled air carriers in the same proportion that each scheduled air carrier's exclusive use space bears to the total exclusive use space of all scheduled air carriers.*

With respect to the charge for "common use" of "space within the Terminal Building," one-twelfth of the total annual charge shall be prorated monthly among all scheduled air carriers based upon the following formula:

Twenty percent of one-twelfth of the annual charge shall be prorated monthly equally to all scheduled air carriers.

Eighty percent of one-twelfth of the annual charge shall be prorated monthly to each scheduled air carrier in the same proportion that each scheduled air carrier's boarding passengers at the airport during the month of account bears to the boarding passengers of all scheduled air carriers at the airport during the month of account.

With respect to the charge "for use of the public address system," one-twelfth of the total annual charge shall be prorated monthly among all scheduled air carriers based upon the following formula:

Twenty percent of one-twelfth of the annual charge shall be prorated monthly equally to all scheduled air carriers.

Eighty percent of one-twelfth of the annual charge shall be prorated monthly to each scheduled air carrier in the same proportion that each scheduled air carrier's trip departures at the airport during the month of account bears to the trip departures of all scheduled air carriers at the airport during the month of account.

The Jacksonville Port Authority shall bill all scheduled air carriers in accordance with the foregoing formulae, and each scheduled air carrier for such scheduled air carrier's share determined in accordance therewith, unless and until The Jacksonville Port Authority notifies each carrier, in writing, that a different formula or formulae, as set forth in said notice, shall be used for filling after the date specified therein.

(Italics added.)

As a result of the application of the above formula, the per square foot rent was increased from $10.48 per year effective October 27, 1968, to $11.048 effective April 1, 1971, $11.14 September 1, 1973, and $11.348 effective November 1, 1973.

Defendants have refused to pay the increases brought about by the surrendering of "exclusive use" space since April 1, 1971, paying only at the original $10.48 rate.

Defendants herein have raised numerous defenses contesting the authority of plaintiff to set rates by resolution; the authority to increase the pro-rata charge of defendants' "exclusive use" space upon surrender of a portion of such space by another carrier; and that the rates charged are "unconscionable, confiscatory, and higher than a fair rental rate".

The authority of plaintiff to set the rates is clearly established. Chap. 633-1447, laws of Florida as amended by Chap. 67-1533, authorizes the plaintiff —

> "To fix the rates for wharfage, dockage, warehousing, storage, landing and port and terminal charges for the use of the airport and harbor facilities owned or operated by the authority."

Adopting a resolution is a proper method of doing so since a public body speaks only through its official acts, i.e., by resolution or ordinance. *Beck v. Littlefield*, 68 So.2d 889 (Fla. 1953).

The application of the pro-rata provisions of the "exclusive use" space provision causes the court considerably more concern. The defendant air carriers understandably take the position that another carrier should not be able to unilaterally surrender such space to the plaintiff, thereby causing the defendants' pro-rata share of the total annual charge to be correspondingly increased. In essence, defendants contend that each air carrier is bound to pay its share of the annual charge on the basis of the original amount of "exclusive use" space occupied by each carrier. They point to the absence of the phrase "during the month of account" from the charge schedule.

The court notes that the annual charges provided for in Section 8 of the resolution for use of the various facilities at the airport are prorated among the carriers on a "proportion of use" basis. In the absence of some written lease agreement or other prohibition, it seems entirely reasonable for plaintiff to be able to accept abandoned "exclusive use" space from any carrier and adjust the pro-rata portion of the annual charge among the various carriers. This is consistent with proration of the other annual charges on the "proportion of use basis".

Defendants have failed to show that the rates charged by plaintiff are either "unconscionable, confiscatory [or] higher than a fair rental rate" for the facilities in question and under the existing circumstances as shown by the evidence. The court has also considered the other contentions of defendants.

Accordingly, it is adjudged as follows —

1. Plaintiff, Jacksonville Port Authority, do have and recover of and from defendant, National Airlines, Inc., the sum of $24,868.84, for which let execution issue.

2. Plaintiff, Jacksonville Port Authority, do have and recover of and from the defendant, Southern Airways, Inc., the sum of $9,246.20, for which let execution issue.

3. Plaintiff, Jacksonville Port Authority, do have and recover of and defendant, Delta Air Lines, Inc., the sum of $37,642.98, for which let execution issue.

4. Costs shall be taxed in further appropriate proceedings.